UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

TAB 11

UNITED STATES OF AMERICA,    )
            Plaintiff,        )
                             )
v.                           )        CASE No.
                             )
GARY L. SAMPSON             )
            Defendant        )
                             )

## DECLARATION OF JOSEPH J. CASEY

I, Joseph J. Casey, do hereby swear and state the following:

1.    In July 2001, I was employed by the Commonwealth of Massachusetts, Department of Environmental Management, as a supervisor/park manager at the Myles Standish State Forest. I am currently employed in the same capacity at the Scusset Beach State Reservation in Sandwich, MA.

2.    In the late afternoon of July 27, 2001, I was working at MSSF when I heard a call on my radio from Joe Barrett, a laborer working in the College Pond area of the park. Barrett said he was having a problem with a man at the pond who seemed to have psychiatric problems and he wanted someone to watch his back. When I responded to Joe's location at the pond, he pointed out a man sitting on a picnic table staring out at the pond. He said the man had been dropped off at the park and entered on foot earlier in the day. He also said the man claimed to be on leave from an assignment with the CIA. I noticed that the man was wearing long pants, long-sleeved shirt, and a hooded sweatshirt, though it was a hot day. All of this, plus the fact that he was at the park alone and on foot, seemed very strange to me.

3.    I went over to the picnic table and sat on the bench, facing the man diagonally across the table. I talked to him alone for about 8-10 minutes, then broke off the conversation when Bob Akin, an environmental police officer, arrived on the scene. A few days later, I recognized this man on TV as Gary Sampson, though I knew him as "Swanson," the name he'd given to me at the park.

4.    After two interviews at the park with FBI and/or Massachusetts State Police detectives, I was asked to appear at the U.S. District Court in Boston on September 26, 2001 before a grand jury investigating the case against Gary Sampson. At the courthouse, I was interviewed by Assistant United States Attorney Frank Gaziano just prior to my appearance in the grand jury.

5.    During this interview, Mr. Gaziano asked me to describe Sampson's demeanor and my impressions of him as I talked with him at the picnic table. I told him that I immediately sensed that there was something deeply wrong with the man, that he was different than

99.9 percent of the people I encounter who are causing problems at the park. I said that Sampson's eyes were cold and empty, yet there was also something disturbing about them. I said that Sampson never threatened me or said anything alarming, yet I definitely felt uncomfortable and I was glad there were other people around. Basically, I said I felt there was something just very off or abnormal about Sampson's presence.

6. Mr. Gaziano then asked me whether I was a trained psychologist, implying that I had no business assessing Sampson's mental state. I told him I was making these observations based on years of observing and dealing with people, both in my work as a park supervisor and general life experience. I also said I had taken college psychology courses in the past but that had nothing to do with my impressions of Sampson.

7. Mr. Gaziano appeared to be concerned that I might repeat some of these observations to the grand jury, because he then cautioned me not to provide any more information or details than were necessary to answer his questions. He told me to watch for signals from him, like raising his hand, to know when to stop talking. He explained that he knew exactly what he wanted to get out of me and that I should be very careful not to elaborate or expand my answers beyond the minimum to answer the question. He didn't ask me to lie, but it was clear to me he wanted only a very limited response to questions about Sampson's demeanor or mental state.

8. At no time was I ever contacted by representatives of Sampson's defense team for trial. Had I been asked, I would certainly have been willing to meet with them. I was not asked to testify at the Sampson trial.

Signed under pains and penalties of perjury this ⏤ day of April, 2009.

Joseph J. Casey

SANDWICH MA