Tab 90

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS


UNITED STATES OF AMERICA        )  CR 01-10384
                               )  Boston, MA
v.                          )  November 10, 2003
                               )
GARY LEE SAMPSON             )


BEFORE THE HONORABLE MARK L. WOLF
UNITED STATES DISTRICT JUDGE
TRIAL DAY 3


APPEARANCES:

United States Attorney
by FRANK GAZIANO, GEORGE VIEN, JOHN WORTMANN, AUSAs
One Courthouse Way, Boston, MA 02210
for Government

Ruhnke & Barrett
by DAVID RUHNKE, ESQ.
47 Park St., Montclair, NY 07042 and
ROBERT SHEKETOFF, ESQ. & STEPHANIE PAGE, ATTY.,
for Defendant


JUDITH A. TWOMEY, RPR
Official Court Reporter
One Courthouse Way
Courtroom 10~Room 5200
Boston, MA 02210
(617)946-2577

142

(Short pause.)

MICHAEL ANABEL, having been duly sworn, was examined and testified as follows:

DIRECT EXAMINATION BY MR. WORTMANN:

Q. Sir, could you tell us your name, please.

A. Michael Anabel.

Q. Spell it for the record.

A. A-n-a-b-e-l.

Q. Where do you live, sir?

A. I live in Marshfield, Mass.

Q. How long have you lived there?

A. I've resided there for a little over a year and-a-half.

Q. What kind of work do you do?

A. I own a livery service, a taxi cab company.

Q.  And a livery service is what?

A. It's a call for -- like a cab service, car service.

Q. What is the name of the company?

A. Traveler Transportation.

Q. And you own the company?

A. Yes, I do.

Q. Presently, how many people work for you?

A. Presently, we have around seven employees.

Q. How long have you run this business, sir?

A. Since April of '99.

143

Q. Can you tell us how large the business was back in 2001?

A. I believe we had four vehicles at that time.

Q. And, generally, could you describe how you get customers and, you know, is it mostly by telephone?

A. It's all phone service and contract work that we have.

Q. And what geographic area do you serve?

A. Pretty much the entire South Shore up to Quincy.

Q. Were you working on July 25, 2001?

A. Actually, I was -- had the day off for most of it, but I'm always available when needed.

Q. For some reason, did you come into the office?

A. Well, I came into the office -- quote-unquote, my vehicle is my office, pretty much -- but I did do a couple of fares that day.

Q. And is there one fare in particular that you recall?

A. Well, I got a call to the Green Harbor general store in Marshfield. They called me and, at the time, the other drivers were pretty busy.

Q. So you got the call and you went and --

A. Yes, I did.

Q. And approximately what time, if you remember?

A. If I remember correctly, it was two o'clock in the afternoon.

144

Q. Do you remember the weather that day?

A. No, I don't, sorry.

Q. How far from the Green Harbor general store were you when you got the call?

A. I don't remember where I was when I got the call, but it didn't take long to get there, ten minutes.

Q. Tell us what happened when you got to the general store.

A. There was a man waiting outside, wanting to go down to Plymouth.

Q. Describe him.

A. From what I remember, he was medium build, probably 35, 40 years old, looked to me.

Q. Okay. Do you see him in the courtroom?

A. Yeah, I do.

Q. Point him out, please.

A. (Indicating.)

Q. What's he wearing?

A. What was he wearing?

Q. What's he wearing right now?

A. White shirt.

Q. Sitting at counsel table?

A. Right.

MR. WORTMANN: Your Honor, may the record reflect that Mr. Anabel has pointed to the defendant Gary

145

Lee Sampson.

THE COURT:  Yes.

Q.  So you pull up to the Green Harbor.  The fare gets in, and what happens?

A.  Drove to Plymouth.

Q.  Do you recall any conversation when you first got into the car?

A.  Just where in Plymouth he was going and, barely, any conversation, wasn't much conversation.

Q.  So there wasn't much small talk while you were in the cab?

A.  Not that I recall.

Q.  How long was he in the cab with you?

A.  20 minutes, straight to the  --

Q.  Can you recall anything that was said other than him telling you where he wanted to go?

A.  Not much.  There was an incident.  The fare was $25, and he claimed he only had $2, so I just took that

Q.  When did that happen?

A.  At where I dropped him off at the exit 5.

Q.  Let me just slow you down for a second, Mr. Anabel.  You got to exit 5, and you turned around, and I presume you told him how much the fare was?

A.  Mm hmm.

Q.  And what did you tell him?

146

A. It was $25, and he said he only had 20, so I didn't put up a stink about it, I just took the money and went on my way.

Q. When he pulled his bills out, did you see whether he had any more money?

A. No, I didn't see that.

Q. And where exactly was it that you dropped him off?

A. It's a rest area and a bus station in Plymouth. It's kind of noted by a totem pole there, exit 5 on Pond Road.

Q. Are you familiar with where the Plymouth police station is?

A. Mm hmm. It's right down off the exit there.

Q. How far from where you dropped off Gary Lee Sampson?

A. I don't know, 300 yards, maybe.

Q. Can you see it from where you dropped him off?

A. I believe you can, yeah.

MR. WORTMANN: Nothing further, your Honor. Thank you.

CROSS EXAMINATION BY MS. PAGE:

Q. Good afternoon, Mr. Anabel.

A. Hi.

Q. Hi. Just a couple of questions. There's a bar by the name of the Ranch House that's down in the area around Green Harbor.

A. Mm hmm.

147

Q.   And it's couple of streets over or so?

A.   Yeah.  It's maybe a quarter of a mile.

Q.   Okay.  And during this 20 minute -- did you say it was like a 20-minute ride?

A.   Mn hmm.

Q.   With Mr. Sampson in the back seat, he was fairly quiet, and he was quiet until the very end when you were talking about the fare, isn't that correct?

A.   Hmm.

Q.   I'm sorry?

A.   From what I recall, yes.

Q.   And when you described Mr. Sampson to the State Police and the FBI, you described him as scraggly looking, is that correct?

A.   If that's what I put in the statement, that's what I said.

MS. PAGE:  May I approach the witness, your Honor?

THE COURT:  Yes.  With what?

MS. PAGE:  Do you want me to tell you?

THE COURT:  Yes.

MS. PAGE:  It's his statement to the FBI.  I believe it's Bates numbered 782.

THE COURT:  782?

BY MS. PAGE:  Just to see if this helps you

148

remember.

Q.  Does that help you remember?

A.  (Nodding.)

MS. PAGE:  Would the court like to see this, your Honor?

THE COURT:  Yes, that would help.  I think I have different numbers on mine.

MS. PAGE:  I'm sorry.

THE COURT:  That's okay.

MS. PAGE:  It's at the bottom.

(Short pause.)

BY MS. PAGE:

Q.  Mr. Anabel, after having seen your statement to the FBI, you did describe him as being scraggly looking, isn't that right?

A.  Yes.

MS. PAGE:  Thank you very much, sir.

THE COURT:  Are there any further questions?

MR. WORTMANN:  There are none, your Honor.

THE COURT:  You're excused.  Thank you.

Prosecution may call the next witness.

MR. GAZIANO:  Thank you, your Honor.  Kerri DiCarlo.

(Short pause.)

KERRI DiCARLO, having been duly sworn, was